**STATE of Iowa, Appellee,**

v.

**Robert Dean MURPHY, Appellant.**

No. 89–563.

Supreme Court of Iowa.

Jan. 24, 1990.

David D. Butler, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Charles J. Krogmeier, Acting Deputy Atty. Gen., Mark Hunacek, Asst. Atty. Gen., and Odell McGhee, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and ANDREASEN, JJ.

NEUMAN, Justice.

Defendant Robert Dean Murphy appeals his conviction, following jury trial, for the crime of operating while intoxicated (OWI), fourth offense. *See* Iowa Code § 321J.2 (1987). His principal contention concerns the admissibility of field sobriety test results for horizontal gaze nystagmus. We affirm.

The jury could have found the following facts. In mid-afternoon on August 19, 1988, a Des Moines police officer was following Murphy's vehicle when he observed it swerve left of the center line in the 2200 block of East Walnut Street. After observing the vehicle swerve again across the center line in the following block, the officer turned on his red lights in an attempt to pull Murphy over. Murphy continued to drive and the officer resorted to using his siren to gain Murphy's attention. Murphy ran a stop sign and again crossed the center line before stopping.

As Murphy exited his vehicle, the officer detected the odor of alcohol on his breath and observed his unsteady gait. The officer summoned back-up assistance for a possible OWI arrest. Officer William Jones, a specially trained police officer with the Serious Traffic Offender Program (STOP), arrived on the scene.

Officer Jones administered a battery of field sobriety tests including one to measure the effect of alcohol on eye muscle reflexes known as the horizontal gaze nystagmus (HGN) test. Murphy failed every test. He was then arrested and transported to the Des Moines police station. At the station, Murphy refused a breath test and denied having consumed any alcoholic beverages. He was subsequently charged by trial information with the crime of operating while intoxicated, fourth offense.

At trial, Murphy offered the testimony of witnesses, including his wife, with whom he had eaten lunch at Tom's Tap on the day in question. These witnesses testified that Murphy consumed only one drink with his lunch and did not appear to be intoxicated when they left him. Another witness testified that she spoke to Murphy approximately one-half hour before his arrest and he did not seem intoxicated to her.

In his own testimony, Murphy conceded having one drink with his lunch. He also stated that he was still finishing his drink when the others went back to work. Murphy asserted that he went directly from the tavern to his wife's place of business. The jury found Murphy guilty as charged.

On appeal, Murphy alleges that the trial court erred by (1) allowing Officer Jones to give his opinion concerning Murphy's intoxication; (2) overruling defendant's motion to exclude the results of a horizontal gaze nystagmus test; (3) overruling Murphy's motion for directed verdict based on insufficiency of the evidence; and (4) miscellaneous rulings that, taken together, resulted in the denial of a fair trial.

Our review is for the correction of errors at law. Iowa R.App.P. 4. We shall consider Murphy's arguments in turn.

■ I. During the direct examination of Officer Jones, the following colloquy occurred:

Q: Based upon your observations and the tests that you had performed upon Mr. Murphy, ... did you make a determination as to whether he was under the influence of an intoxicant? A: It was my belief that he was under the influence and impaired.

Murphy unsuccessfully moved to strike this testimony and now challenges its admissibility on appeal. He argues that it amounted to an impermissible expression of the officer's opinion on the ultimate issue of guilt. We cannot agree.

It is well settled in this State that a lay witness may express an opinion regarding another person's sobriety, provided the witness has had an opportunity to observe the other person. *State v. Davis*, 196 N.W.2d

885, 893 (Iowa 1972). We see no logic in limiting the admissibility of such testimony when the witness is specially trained to recognize the characteristics of intoxicated persons.

■ Moreover, it has long been held that a witness, either lay or expert, may testify to an "ultimate fact which the jury must determine." *Grismore v. Consolidated Prods., Co.*, 232 Iowa 328, 361, 5 N.W.2d 646, 663 (1942). The principle has been embodied in our rules of evidence. *See* Iowa R.Evid. 704 (testimony in form of opinion or inference not objectionable because it embraces ultimate fact issue). A contrary rule would, of course, lead to the absurd result of potentially excluding the most relevant testimony available. *See Grismore*, 232 Iowa at 346, 5 N.W.2d at 663.

That is not to say that a witness may be permitted to testify regarding a defendant's guilt or innocence. Thus in *State v. Maurer*, an OWI conviction was reversed because an arresting officer was allowed to give his opinion that "beyond all reasonable doubt ... the defendant was operating a motor vehicle upon a public highway while he was under the influence of an alcoholic beverage." 409 N.W.2d 196, 197 (Iowa App.1987). Such testimony about the legal standard of proof, combined with a recitation of the elements of the offense, clearly invaded the province of the jury and the court. Contrary to Murphy's assertion, however, no such unequivocal comment about the defendant's guilt appears in the record before us. Officer Jones merely offered his personal observation regarding Murphy's insobriety. The trial court was within its discretion in allowing him to do so.

II. Prior to trial, Murphy moved to exclude evidence that he failed a test for horizontal gaze nystagmus. Murphy challenged the admissibility of the test results on foundational grounds: first, that the test is inherently unreliable and, second,

that Officer Jones was unqualified to interpret the test results for the jury. He renews those objections on appeal.

At the outset we note that the principal obstacle to the admissibility of the horizontal gaze nystagmus test may be its pretentiously scientific name. Though cumbersome, the test's title is quite descriptive. "Nystagmus" is a term used to describe an involuntary jerking of the eyeball, a condition that may be aggravated by the effect of chemical depressants on the central nervous system. *State v. Superior Court*, 149 Ariz. 269, 271, 718 P.2d 171, 173 (1986) (citing *The Merck Manual of Diagnosis and Therapy* (14th ed.1982)). An inability of the eyes to maintain visual fixation as they are turned from side to side is known as "horizontal gaze nystagmus." *Id.*

Murphy contends that because the test generally measures the effect of alcohol on eye movements, it is outside the ken of the average layperson and thus its reliability and results should be admitted only through the testimony of a person with scientific training. The State, on the other hand, argues that HGN is a field sobriety test that is neither more nor less scientific than the traditional "walk-and-turn" or "one-leg stand" tests routinely administered and evaluated by police officers in the detection, arrest, and trial of intoxicated drivers.

■ As we analyze these opposing viewpoints, we are guided by Iowa Rule of Evidence 702[1] and the Iowa common-law rule that proof of "general acceptance in the scientific community" is not a prerequisite to admission of evidence, "scientific or otherwise, if the reliability of the evidence is otherwise established." *State v. Hall*, 297 N.W.2d 80, 85 (Iowa 1980). The question is whether the proffered evidence will assist the jury in resolving an issue. *State v. Klindt*, 389 N.W.2d 670, 672 (Iowa 1986). That determination necessarily requires a threshold finding of reliability "because unreliable evidence cannot assist a trier of

---

1. The rule states:
   If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

fact." *Id.* But the scrutiny with which a court must examine scientific evidence for reliability turns on the complexity of the test in issue and the likely impact of the evidence on the fact-finding process. *Hall,* 297 N.W.2d at 85. On such questions of admissibility of expert testimony, the trial court is vested with broad discretion. *Id.* at 86.

■ The handful of other courts that have addressed the issue differ in their conclusions. Some courts have held that an officer is not qualified to testify to the HGN test's scientific reliability. *State v. Borchardt,* 224 Neb. 47, 58–59, 395 N.W.2d 551, 559 (1986); *Commonwealth v. Miller,* 367 Pa.Super. 359, 532 A.2d 1186, 1189–90 (1987); *State v. Barker,* 366 S.E.2d 642, 645 (W.Va.1988). Other courts hold that HGN evidence, although of a scientific nature, is reliable and admissible with proper foundation as to the techniques used and the officer's ability to use it. *State v. Superior Court,* 149 Ariz. at 280, 718 P.2d at 181; *State v. Clark,* 762 P.2d 853, 856–57 (Mont.1988). Still other courts regard the HGN test as no more scientific than other field sobriety tests that require no expert interpretation. *State v. Nagel,* 30 Ohio App.3d 80, 81, 506 N.E.2d 285, 286 (1986).

On balance, we think the result reached in *State v. Nagel* most closely mirrors our own liberal approach to the admissibility of technical information. In *Nagel,* a case nearly identical to the one before us, the Ohio court discounted the need for scientific testimony with the following reasoning:

> [Defendant] argues that the officer should not have been allowed to testify as to the gaze nystagmus test because he was not qualified as an expert and there was no evidence that such test has a proven scientific basis. The test [defendant] objects to consists of checking the movement of an individual's eyes as they follow the path of a moving object, such as a pen, before the eyes. It is not comparable, as [defendant] contends, to a polygraph test which requires the use of a machine, the scientific reliability of

which may be questioned. The gaze nystagmus test, as do other commonly used field sobriety tests, requires only the personal observation of the officer administering it. It is objective in nature and does not require expert interpretation. Objective manifestations of insobriety, personally observed by the officer, are always relevant where, as here, the defendant's physical condition is in issue.

*Nagel,* 30 Ohio App.3d at 80, 506 N.E.2d at 286.

The record before us compels the same conclusion. Officer Jones is an eleven-year veteran of the police force with specialized training in the field of alcohol-related law enforcement. He received his training in the administration of the HGN test and other field sobriety tests through the Iowa Law Enforcement Academy. He is not only qualified to administer such tests, he is certified by the academy as an instructor. On cross-examination, counsel for defendant brought out the fact that the HGN test was developed by the U.S. Department of Transportation National Highway Traffic Safety Administration. It is included in its training manual as one of the three recommended field sobriety tests, along with the walk-and-turn and one-leg stand test also given to Murphy.

Officer Jones carefully described the HGN test for the jury this way:

> The horizontal gaze nystagmus test is looking for an indication of an involuntary jerking of the eyeball. What you're looking for is a definite jerking at the maximum deviation, which would be when the eyeball is to the far left or far right. You're also looking for the ability of the eye to follow an object in a smooth manner. It would be like a marble rolling on a piece of glass versus a marble rolling on a piece of sandpaper. The third item you're looking for is an onset of that nystagmus or the bounce in the eyeball prior to a 45–degree angle, and at an approximately 45–degree angle would be with the object that you're following being fifteen inches from their face and about to their shoulder.

After describing what he was looking for, Officer Jones then told the jury how the test is administered:

> [Y]ou hold an object or your finger ... [and] ask the individual to stand facing forward with their feet together, hands to their side, [keeping] their head straight forward and follow the tip of your finger with their eyes, and what you'll do is you'll take your finger and you'll move it from dead center in front of them out to the side, and what you watch for there again is whether their eye follows in a smooth manner. You bring it back and you make this pass twice. You bring this pass up the third time and you hold it out to the far edge approximately four seconds, and that's your maximum deviation, when the eyeball's clear to the corner, and you're watching for a bounce or a nystagmus at this point also.... When you see what you believe to be the location that it begins to bounce you stop at that point to assure yourself that it is still bouncing at that location.

Finally, the officer testified that Murphy failed the test by accumulating a maximum of six points scored as follows:

> If the eyeball does not follow the object in a smooth manner you can start off with one eye and test the other. If it doesn't follow in a smooth manner that's one point. If you have a distinct nystagmus at the maximum deviation, that's the eyeball bouncing when it's clear out to the far corners, that's another point. And if the onset is prior to 45–degrees that is another point. So each eye has three possible points.

From this record, we think the following conclusions may be drawn. The Iowa Law Enforcement Academy and the U.S. Department of Transportation view the horizontal gaze nystagmus test as one of three reliable indicators of intoxication and recommend its use as a field sobriety test. Officer Jones has been professionally trained to properly administer the test and objectively record the results. The ease with which the test may be administered and evaluated obviates the need for a more scientific interpretation.

The HGN procedures described by Officer Jones to the jury did not depart significantly from his objective description of Murphy's performance on the walk-and-turn and one-leg stand tests. No one test was identified as more reliable an indicator of intoxication than another. Rather, each gave the jury a way of evaluating Murphy's physical condition on the afternoon in question. Murphy had an opportunity to challenge the officer's observations by way of cross-examination. He brought out the fact that other factors, such as physical injury or prescription drugs, might aggravate not only nystagmus but balance and coordination as well. It was up to the jury to accept or reject this evidence based on the entire record.

In summary, Officer Jones was fully qualified to testify to his specialized knowledge. The information he imparted could reasonably have been found by the trial court to "assist the trier of fact to understand the evidence or to determine a fact in issue." Iowa R.Evid. 702. The record presents no reason to question the reliability of the horizontal gaze nystagmus test nor any indication of an abuse of discretion by the trial court in admitting its results. We therefore conclude that testimony by a properly trained police officer with respect to the administration and results of the horizontal gaze nystagmus test is admissible without need for further scientific evidence.

III. Murphy also argues on appeal that the evidence taken as a whole is insufficient to prove him guilty of OWI beyond a reasonable doubt. He apparently believes that his own testimony, corroborated by his luncheon companions, is strong enough to overcome the opinion of the arresting officers as a matter of law. We are not so persuaded.

Viewing the evidence in the light most favorable to the State, we conclude that a jury could have found defendant guilty of both of the essential elements of the offense: (1) operating a motor vehicle (2) while under the influence of alcohol. *See State v. Maurer*, 409 N.W.2d at 198; Iowa

Code § 321J.2. The assignment of error is without merit.

We have carefully considered the other rulings challenged by Murphy on appeal. We find them to have been correctly resolved by the trial court and conclude that none of them merit our attention here. We thus affirm the judgment and sentence of the district court.

AFFIRMED.