811 P.2d 488

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Michael J. GARRETT,
Defendant–Appellant.**

No. 17795.

Supreme Court of Idaho,
Boise, January 1990 Term.

May 9, 1991.

Wilson & Carnahan, Boise, for defendant-appellant. Robert R. Chastain, argued.

Jim Jones, Atty. Gen., and Myrna A.I. Stahman, argued, Deputy Atty. Gen., Boise, for plaintiff-respondent.

BISTLINE, Justice.

The defendant-appellant Michael J. Garrett challenges the district court's admission into evidence of the results of a horizontal gaze nystagmus test (or HGN test) administered to Garrett by the police officer who had stopped him for driving while under the influence of alcohol or drugs (DUI). Garrett also appeals the use of two prior DUI convictions to enhance his present conviction to the status of a felony. We affirm the district court.

In the early morning of March 11, 1988, Garrett was stopped by police officer Gary

Fost for driving straight through an intersection from a "right turn only" lane, and not heeding a "do not enter" sign. Fost administered seven field sobriety tests to determine whether Garrett was driving under the influence of alcohol or drugs. On the basis of Garrett's performance in these tests, Garrett was arrested for DUI.

In addition to the HGN test, which was administered first, there were six other field sobriety tests administered to Garrett. After the HGN test, the police officer administered the walk and turn test, the one leg stand test, the alphabet recitation test, the counting test, the fingertip count test, and the phrase test. The first three of these tests (HGN, walk and turn, one leg stand) constitute the basic battery of field sobriety tests. The other four tests administered to Garrett are administered at the option of the police officer. According to Officer Fost's testimony at trial, Garrett failed each test, with the exception of the alphabet recitation test. Garrett did recite the alphabet in the proper order, but according to Officer Fost, Garrett's speech was slurred.

At the station house, Garrett refused to submit to a breath test. At trial, Garrett pleaded not guilty, and Garrett's defense strategy was to refute Officer Fost's credentials and expertise concerning the HGN test. He also challenged the State's use of two prior DUI convictions to enhance the March 1988 charged violation to a felony. The trial court denied Garrett's motion in limine concerning the HGN test results, and denied Garrett's motion to dismiss the felony charge against him.

The trial proceedings were bifurcated. A jury, allowed to consider the HGN test results, found Garrett guilty of DUI. The court, without a jury,[1] then determined that Garrett's two prior convictions justified the felony charge. This appeal followed.

I. THE HGN TEST IS RELIABLE AND WAS PROPERLY ADMITTED BY THE DISTRICT COURT AS EVIDENCE OF DUI.

Garrett argues that HGN test results are scientific evidence, requiring a determina-

---

1. The defense waived the jury to this part of the trial. *See* R. 26.

tion of their reliability and acceptance in the scientific community. Garrett refers to the *Frye* test for novel scientific evidence, *Frye v. United States*, 293 F. 1013 (D.C. Cir.1923), and to an Arizona case which determined that the HGN test satisfies *Frye*. *State v. Superior Court*, 149 Ariz. 269, 718 P.2d 171 (1986). Garrett distinguishes the Arizona case from his circumstance by pointing out that many specialists were called in to testify about HGN test reliability in Arizona, whereas here only the arresting officer testified to the reliability of the HGN test. The State agrees that the HGN test results are scientific evidence, contending also that those results were properly admitted in accordance with the rule promulgated by this Court, I.R.E. 702.[2] The State relies heavily upon the Arizona case cited by Garrett, *State v. Superior Court*, to show the reliability of the test, and also cites to a Montana case which recently considered the question and upheld the reliability of HGN test results. *State v. Clark*, 234 Mont. 222, 762 P.2d 853 (1988).

This presentation of the reliability issue is considered in two parts. Even though a police officer may be qualified as an expert in administering the HGN test, the question whether the HGN test itself is reliable cannot be answered by this inquiry. *See State v. Reed*, 83 Or.App. 451, 732 P.2d 66 (1987); *State v. Barker*, 366 S.E.2d 642 (W.Va.1988). Therefore, we must first consider whether the HGN test is reliable and has been accepted by the scientific community. If our answer to the first part of this inquiry is in the affirmative, then we must also determine what HGN test results may be used for, and whether the police officer was competent to testify under the applica-

ble rules of evidence as to the administration of the HGN test and its results.

## A. THE HGN TEST HAS BEEN ACCEPTED AS RELIABLE.

This Court has not heretofore been presented with having to decide whether HGN tests are reliable enough for their results to be admissible at trial. However, other state courts have considered this question, and we may properly look to their opinions for guidance.[3] Because the reliability of a test based on a scientifically tested phenomenon should not vary from jurisdiction to jurisdiction, we examine what other jurisdictions have done when HGN test results are offered as evidence in DUI cases.

Unlike the scientific procedure of DNA "fingerprinting" discussed in *State v. Horsley*, 117 Idaho 920, 792 P.2d 945 (1990), in which the reliability of that test was directly related to the procedures and protocols involved because of the possibility of test sample contamination and confusion, the HGN test is a test for an on the scene, readily observable phenomenon. This phenomenon was recently described in *State v. Murphy*, 451 N.W.2d 154 (Iowa 1990):

At the outset we note that the principal obstacle to the admissibility of the horizontal gaze nystagmus test may be its pretentiously scientific name. Though cumbersome, the test's title is quite descriptive. "Nystagmus" is a term used to describe an involuntary jerking of the eyeball, a condition that may be aggravated by the effect of chemical depressants on the central nervous system. *State v. Superior Court*, 149 Ariz. 269, 271, 718 P.2d 171, 173 (1986) (citing *The Merck Manual of Di-*

2. **Rule 702. Testimony by experts.**—If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

3. Such "decisions" are persuasive only as they contain analysis and reasoning which recommends itself to this Court. *See for example,*

*State v. Hartwig*, 112 Idaho 370, 375, 732 P.2d 339, 344 (Ct.App.1987) (In answer to a challenge made to the scientific reliability of the Intoximeter 3000 machine, the court replied that "[a] brief review of case law indicates that the Intoximeter 3000 is used, at a minimum, in the following states—Alaska, Georgia, Idaho, New Hampshire, New York, Tennessee, Wisconsin, Wyoming, and country-wide in England. We conclude that the scientific acceptance of the Intoximeter 3000 is well-established,....").

*agnosis and Therapy* (14th ed. 1982)). An inability of the eyes to maintain visual fixation as they are turned from side to side is known as "horizontal gaze nystagmus." *Id.*

*Murphy,* 451 N.W.2d at 156. The test only requires the objective observations of the person administering the test. No further interpretation of results or procedures is required. If the subject's eyes do exhibit nystagmus, that is an indication that the subject may be under the influence of alcohol. Nevertheless, the HGN test is a different type of test from such sobriety tests as balancing on one leg or walking in a straight line because it relies upon science for its legitimacy rather than upon a fact based in common knowledge.

In *State v. Superior Court,* 149 Ariz. 269, 718 P.2d 171 (1986), the Arizona Supreme Court conducted an in-depth analysis of HGN testing. Resisting the defendant's motion to exclude the results of an HGN test, the State presented testimony from: (1) Dr. Marcelline Burns, a research psychologist who studied the effect of alcohol on behavior; (2) an officer of the Los Angeles Police Department who was a consultant to the National Highway and Traffic Safety Administration (NHTSA) on field sobriety testing; (3) and two officers from the Arizona Department of Public Safety, one of whom at the time conducted the HGN test training program for the State of Arizona. In addition to this testimony, the State submitted articles from scientific publications and research reports done on behalf of the NHTSA, and the court conducted its own research.

The court ruled that the HGN test satisfies the *Frye* standard. We have been furnished with no publications or other authority which refutes the reasoned decision of the Arizona court. We therefore hold that the HGN test does satisfy the *Frye* standard, because the test is based on a generally accepted theory: Persons who are intoxicated (as well as some other non-intoxicated members of the population) exhibit nystagmus. The courts of other jurisdictions, including Alaska, Arizona, Iowa, Louisiana, Montana, Ohio, and Texas have also decided that the HGN test satisfies *Frye.*

We note, however, that the HGN test results are not admissible for all purposes. HGN test results may not be used at trial to establish the defendant's blood alcohol level in the absence of the chemical analysis of the defendant's blood, breath, or urine. The reason for this limitation is three-fold. First, factors other than alcohol in the bloodstream can cause nystagmus. Nystagmus may be congenital, or due to a variety of factors that affect the brain. Second, laymen jurors are often awed by any procedure referred to as a "scientific" one, and are more easily persuaded to find for the State when scientific evidence in favor of the State is presented. Third, as the Arizona court explained:

> Our holding *does not mean* that evidence of nystagmus is admissible to prove BAC [blood alcohol content] of .10 percent or more in the absence of a laboratory chemical analysis of blood, breath or urine. Such a use of HGN test results would raise a number of due process problems different from those associated with the chemical testing of bodily fluids. The arresting officer's 'reading' of the HGN test cannot be verified or duplicated by an independent party. [Citations omitted.] The test's recognized margin of error provides problems as to criminal convictions which require proof of guilt beyond a reasonable doubt. The circumstances under which the test is administered at roadside may affect the reliability of the test results. Nystagmus may be caused by conditions other than alcohol intoxication. And finally, the far more accurate chemical testing devices are readily available.

*State v. Superior Court,* 718 P.2d at 181 (emphasis in original). Although we note that in conjunction with other field sobriety tests, a positive HGN test result does supply probable cause for arrest, standing alone that result does not provide proof positive of DUI, because many other factors may cause nystagmus.

The State may prove a violation of I.C. § 18–8004 two ways. *State v. Knoll,* 110

Idaho 678, 718 P.2d 589 (Ct.App.1986) (DUI may be proved by establishing BAC of .10 percent or higher, or by circumstantial evidence of impaired driving ability or other readily observable symptoms of intoxication). A positive HGN test in the absence of some form of chemical analysis for the reasons stated above cannot be used at trial to establish blood alcohol content of .10 percent or above. The theory underlying the HGN test is sound, but HGN test results may only be used to draw certain inferences. As circumstantial evidence of intoxication, a positive HGN test result alone is not evidence of a certain degree of blood alcohol content.

A California court explained the restriction placed upon a police officer's discussion of HGN test results in this manner:

> In the present case the officer testified to the oscillation of the driver's pupil at a certain angle. That is certainly something he could have perceived. What is not based on his perception, however, is the officer's opinion that such oscillation at that angle indicates a blood alcohol level at .12 percent. That conclusion could not possibly be based on the officer's own perceptions....

*People v. Loomis,* 156 Cal.App.3d Supp. 1, 203 Cal.Rptr. 767, 769 (Dep't.Super.Ct. 1984). Officer Fost properly testified about Garrett's nystagmus and the scientific fact that nystagmus may be an indication of intoxication. However, Fost could not testify, given his limited expertise, about the correlation, if any, between Garrett's nystagmus and BAC percentage, because nystagmus does stem from causes other than the ingestion of alcohol.

■ In this case, the State did present testimony that the HGN test result was proof that Garrett's blood alcohol content was above the prescribed limit, even though no chemical analysis was performed. *See* Tr. 33. The admission of such testimony was error, but, in light of the other field sobriety test results, not reversible error. Garrett also failed the walk and turn test, the one leg stand test, the counting test, the fingertip count test, and the phrase test. And, even though he

was able to recite the alphabet in the proper order, Garrett exhibited slurred speech while responding to the alphabet recitation test. Given the other evidence of intoxication, the court's error did not so contribute to the verdict as to leave us with a reasonable doubt that the jury would have reached the same result had the error not occurred. *State v. Hall,* 111 Idaho 827, 832, 727 P.2d 1255, 1260 (Ct.App.1986), *rev. den.* (Jan. 16, 1987).

## B. THE OFFICER WAS COMPETENT TO TESTIFY AS AN EXPERT ON THE ADMINISTRATION OF THE HGN TEST.

We now turn to the issue whether Officer Fost was competent to testify as an expert on the administration of the HGN test. As our Court of Appeals has observed:

> To give expert opinion testimony, a witness must first be qualified as an expert on the matter at hand. Whether a witness is sufficiently qualified as an expert is a matter largely within the discretion of the trial court. Once the witness is qualified as an expert, the trial court must determine whether such expert opinion testimony will assist the trier of fact in understanding the evidence. If the testimony is thus competent and relevant, it may be admissible; the weight given to the testimony is left to the trier of fact. The admissibility of expert opinion testimony is discretionary with the trial court and will not be disturbed absent a showing of abuse of discretion.

*State v. Hopkins,* 113 Idaho 679, 680–81, 747 P.2d 88, 89–90 (Ct.App.1987). The district court did not abuse its discretion by allowing Officer Fost to testify as an expert on the administration of the HGN test.

■ The State satisfactorily established Fost's qualifications. Fost is attached to the Select Traffic Enforcement Team. This group of officers conducts traffic accident investigations and traffic law enforcement, including DUI detection and arrest. Fost is also an instructor in the use of field sobriety tests. Fost was trained by mem-

bers of the Idaho State Police, and he also attended seminars conducted by Dr. Marcelline Burns of the Southern California Research Institute (SCRI). Dr. Burns worked with the NHTSA to develop reliable field sobriety tests, and was one of the designers of the test testifying before the Arizona trial court. *See State v. Superior Court,* 718 P.2d at 173. Even though the testimony elicited from Fost concerning the correlation between nystagmus and blood alcohol content was improper, the court nevertheless properly admitted Fost's expert testimony on the administration of the HGN test.

Qualifying police officers as experts on the administration of the HGN test is a simple matter because, as a California court recently stated:

> The observation of HGN in a person and its interpretation as an effect of alcohol intoxication do not necessarily require expertise in physiology, toxicology, or any other scientific field. The nystagmus effect can be observed without mechanical, electronic or chemical equipment of any kind. At least in the simple form presented in this case, it requires no more medical training than administration of the other field sobriety tests, such as the one-legged balance.

*People v. Ojeda,* 225 Cal.App.3d 404, 275 Cal.Rptr. 472, 474 (1990).

## II. THE TWO PRIOR CONVICTIONS WERE SUFFICIENT FOR I.C. § 18–8005 ENHANCEMENT PURPOSES.

Garrett argues that, because he was never charged with a "DUI, Second Offense," he cannot now be charged with a DUI felony. The DUI statutes require only that there are two prior DUI convictions within the previous five years, for a third to constitute a felony with enhanced punishment. The first judgment of conviction was January 31, 1985, the second judgment of conviction was December 13, 1985, and the third judgment of conviction was entered on October 28, 1988. With all three convictions falling within a five year span of time, the requirements of I.C. § 18–8005, which states the conditions when a third conviction raises the offense to the felony level, are met. *See State v. Bever,* 118 Idaho 80, 794 P.2d 1136 (1990).

The judgment of the district court is affirmed.

BAKES, C.J., concurs.

McDEVITT, J., concurs in the result.

BOYLE, Justice, concurring in result.

Although I concur in the result of the majority opinion which affirms the district court as to the admissibility of the HGN test, I am unable to concur in that portion of the majority opinion which cites and relies upon *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923). In our recent case of *State v. Crea,* 119 Idaho 352, 806 P.2d 445 (1991), we expressly declined to adopt the *Frye* criterion as the basis for admission of scientifically derived evidence as it related to the facts of that case. *See also State v. Iwakiri,* 106 Idaho 618, 682 P.2d 571 (1984).

I agree with the legal analysis contained in Justice Johnson's dissent to the extent that it relates to our case law requiring foundation for the admissibility of evidence based on the reliability of a new scientific method of proof. Although I agree with Justice Johnson's analysis of the law to that extent, after a review of the record I am satisfied that adequate foundation was established and it was not error to admit the results of the HGN test.

JOHNSON, Justice, dissenting.

I respectfully dissent from the opinion of the Court. I would reverse the conviction on the ground that there was insufficient evidence of the reliability of the HGN test to permit Officer Fost to testify to the results of the test.

Prior to the adoption of the Idaho Rules of Evidence in 1985, this Court had required that the reliability of a new scientific method of proof be established as a foundation to the admissibility of evidence based on the new method. *State v. Iwakiri,* 106 Idaho 618, 621–27, 682 P.2d 571, 574–80 (1984); *see also State v. Crea,* 119 Idaho 352, 806 P.2d 445 (1991). The question in *Iwakiri* was the competency of a

witness whose testimony had been hypnotically refreshed. In fashioning a rule for the admissibility of this type of evidence, the Court rejected the per se rule of general acceptability of reliability established in *Frye v. United States*, 293 F. 1013 (D.C. Cir.1923). 106 Idaho at 623–25, 682 P.2d at 576–78. Instead, the Court left the determination of the reliability of the evidence to the trial court, specifying certain safeguards for the guidance of the trial courts. Id. at 625, 682 P.2d at 578. The essence of the Court's holding in *Iwakiri* was that in considering the admissibility of hypnotically refreshed testimony, trial judges should "make a determination whether, in view of all of the circumstances, the proposed testimony is sufficiently reliable to merit admission." *Id.*

The committee that presented Rule 702 of the Idaho Rules of Evidence to this Court for adoption commented on the requirement of reliability as a necessary foundation for the admissibility of expert opinion evidence based on a new scientific method of proof:

> If the proffered opinion evidence would be a novel form of expertise which has not yet received judicial sanction, the court must make an initial inquiry to determine whether the new technique or principle is sufficiently reliable so that it will aid the jury in reaching accurate results.
>
> . . . .
>
> The requirement of general scientific acceptance is in effect a requirement that the probative value of the evidence not be significantly outweighed by the risks of jury confusion, time wasting, or undue prejudice. Since that balancing is required under Rule 403, and since literal application of the general processes, even in contexts where they would pose no significant risks to the adjudicatory process, this rule requires only evidence of reliability for the foundation.

Report of the Idaho State Bar Evidence Committee, C 702, p. 2 (1985).

In *State v. Fain*, 116 Idaho 82, 87, 774 P.2d 252, 257 (1989), this Court also referred to the requirement of reliability in discussing the admissibility of the results of a polygraph examination.

Applying this foundational requirement of reliability to the admission of Officer Fost's testimony based on the HGN test he administered to Garrett, I find the record to be lacking sufficient evidence in support admissibility. The following is the only evidence of reliability that I am able to locate in the record:

Q. [to Officer Fost] In addition to your training, has it been your experience that the [HGN] test is indicative of the presence of alcohol?

A. Yes, it is.

Q. And you base that on the number of times when you've used the test?

A. From my experience, when I do score a person four points on the test, there is a very good likelihood that they are under the influence in the state of Idaho, which is .10.

. . . .

Q. And, as I understand, what you're relying on when you give the Gaze Nystagmus Test, is you're relying on what you perceive as your knowledge of how the human eye reacts when attempting to follow, be it the source of light or be it the end of a pen, as coupled with the presence or nonpresence of alcohol in the body?

A. Yes, sir.

Q. And that's based upon what you've been told by these other folks, by Corporal Sterling or Sergeant LePier, and their training, and things like that?

A. Yes, sir.

Q. But as far as the formal study or personal knowledge of why its is the body makes the eye—assuming it does—why the eye would react, given the presence of alcohol, given a lot of other factors. You don't have formal training in those areas?

A. Well, in all the classes that we have attended and the ones that we have given, we do bring the subjects in before they have been dosed or given any alcoholic beverages to drink. We do give them the eye tests. We look at the eyes.

Then we have them go in. And it is a controlled environment. We know

exactly how much alcohol they are being given. Then we do our training according to that. And we bring them back in after they've had so much to drink, recheck the eyes. And we've done this on numerous occasions.

Based on this foundation, the trial court allowed Officer Fost to testify that Garrett failed the HGN test, indicating it was likely that Garrett's blood alcohol concentration was above .10, which Officer Fost described as "the legal limit in the state of Idaho."

I am unable to accept that the testimony of Officer Fost was sufficient to establish the reliability of the HGN test required by I.R.E. 702. If this establishes the reliability for the admissibility of expert opinion based on new scientific methods, then we must be prepared to accept the admissibility of the result of polygraph examinations based on the testimony of polygraph operators, the admissibility of DNA tests based on the testimony of laboratory technicians who conduct the tests, and the results of other forms of "scientific" testing based on the testimony of those who conduct the tests. In my view, this is not the type of reliability that we should require before allowing testimony of the results of tests conducted based on new scientific methods. The foundation should be laid by experts who have researched the tests and are able to testify as to the scientific basis for the tests.

Having concluded that the testimony of Officer Fost based on the HGN test should not have been admitted, I am unable to conclude that the error was harmless. Although this was a prosecution for driving under the influence and not a prosecution for driving with a blood alcohol concentration of .10 or more, Officer Fost's testimony that Garrett's BAC level was likely .10 or more inevitably affected the jury's consideration. I cannot conclude beyond a reasonable doubt that the jury would have found Garrett guilty without this evidence.