892 P.2d 889

STATE of Idaho, Plaintiff–Respondent

v.

Ronald Dean STEVENS, Defendant–Appellant.

No. 20693.

Supreme Court of Idaho,
Boise, December 1994 Term.

March 30, 1995.

Egusquiza & Weigt, Boise, for appellant.
Dennis C. Weigt argued.

Alan Lance, Idaho Atty. Gen. and Michael A. Henderson, Deputy Atty. Gen., Boise, for respondent. Michael A. Henderson argued.

YOUNG, Justice Pro Tem.

Ronald Dean Stevens (Stevens) was tried before the Ada County Magistrate Division of the 4th Judicial District on the misdemeanor offense of Driving While Under the Influence of Alcohol in violation of I.C. § 18–8004. After a jury was empaneled and sworn to try the case, the magistrate declared a mistrial and dismissed the action. The state appealed this decision to the district court. The district court ruled that the magistrate had abused his discretion in declaring a mistrial and dismissing the case and remanded the case back to the magistrate's court for trial. Stevens has appealed, presenting four issues: (1) whether evidence of a percentage likelihood of intoxication based solely upon a horizontal gaze nystagmus (HGN) test is admissible; (2) whether the introduction of this evidence warranted the declaration of a mistrial; (3) whether the knowing introduction of this evidence by the prosecution constituted prosecutorial misconduct warranting a dismissal of the case with prejudice; and (4) whether the dismissal of charges after jeopardy has attached prevents retrial based on statutory, rule based or constitutional prohibitions against double jeopardy. The first three of these enumerated issues will be considered together since they are logically combined in the issue whether there was prosecutorial misconduct which warranted the granting of a mistrial and dismissal of the case. For the reasons that follow we rule (1) that the introduction of this evidence by the prosecution did not constitute prosecutorial misconduct warranting the court's *sua sponte* declaration of a mistrial and dismissal of the case; and (2) that the dismissal of charges after jeopardy had attached prevents retrial under constitutional prohibitions against double jeopardy.

## I.

### STANDARD OF REVIEW

■ On an appeal from a decision of a magistrate following an appeal to a district judge sitting as an appellate court, the record is reviewed with due regard for, but independently from, the district court's decision. *See State v. Kenner,* 121 Idaho 594, 597, 826 P.2d 1306, 1309 (1992). This Court will uphold the findings of the magistrate court if the findings are supported by substantial and competent evidence. *McNelis v. McNelis,* 119 Idaho 349, 351, 806 P.2d 442, 444 (1991). However, issues of law are freely reviewed by this Court. *In re Mundell,* 124 Idaho 152, 153, 857 P.2d 631, 632 (1993).

## II.

### MATERIAL FACTS

On August 6, 1992, Stevens was stopped by Deputy Patrick Calley of the Ada County Sheriff's Office for driving at a speed of 60 m.p.h. in a 30 m.p.h. zone. In the course of that investigation Stevens performed field sobriety tests and a horizontal gaze nystagmus (HGN) test was administered to him by Deputy Steve Russell. On the basis of his performance of these tests, Stevens was then arrested for the misdemeanor offense of Driving While Under the Influence of Alcohol in alleged violation of I.C. § 18–8004. Stevens was then administered two Intoximeter 3000 breath tests. Each of the two samples of the defendant's breath yielded a result of .11.

A jury trial was commenced on January 12, 1993 before the Honorable Thomas R. Morden. A jury was duly empaneled and sworn. The state then commenced submitting evidence to prove the allegations set forth in its complaint against the defendant.

During the testimony of the first witness, Deputy Calley, defense counsel made a motion for a mistrial and/or a dismissal of this action. (According to Appellant's Reply Brief, at p. 10, this motion was based upon the perception of the defendant that the state's first witness had committed perjury.) The magistrate denied this motion.

During the course of the state's examination of Deputy Steve Russell, the state solicited testimony from him concerning his administration of the HGN test to Mr. Stevens on the date of his arrest. Officer Russell testified that Mr. Stevens demonstrated a nystagmus upon his administration of the test. The record then discloses the following colloquy between the prosecutor and Russell:

Q. What did that indicate to you? That test standing on its own?

A. That test standing on its own, that indicated to me that he had a 77 percent chance, with the statistics by the National Traffic Safety Institute, that h—just that test alone had a 77 percent chance of him being under the influence of alcohol.

Q. Now, where do you base this on? Is this based on your research and your work in this field?

A. Yes, it is.

Q. And based on that test alone, would you have arrested him for DUI? If there were no other field sobriety tests?

A. If I had no other tests, I—all—I conclude all my tests when I do it—that test alone, yes, I would have arrested him for DUI.

Q. Why is that?

A. It's because of the research done at the National Traffic Safety Institute on the field sobriety tests.

Q. Okay. In your work with—you have all kinds of field sobriety tests. Which is the most reliable indicator to you that an individual is under the influence?

MR. WEIGT [defense counsel]: Objection, Your Honor. I think that's speculative. Most reliable? What's he going to base that on?

The magistrate reacted to this objection of defense counsel by removing the jury from the courtroom and questioning the prosecutor as to his belief concerning the admissibility of this evidence. The prosecutor maintained that the evidence was admissible but the magistrate disagreed stating that the state's witness could only "testify as to whether or not the person failed or passed the test"; that the testimony of the witness that there was a "77 percent chance that this guy is under the influence because of (the defendant's failure to pass) the horizontal gaze nystagmus test" was "totally inadmissible", "totally prejudicial", and that "it should not have been gotten into." The magistrate then, *sua sponte*, declared a mistrial. Following the mistrial declaration, the prosecu-

tor stated that he would retry the case. The court responded by stating that he would not permit a retrial because of "prosecutorial misconduct" and dismissed the case *sua sponte*. It is clear from the record that the evidence the magistrate found objectionable and prejudicial was the officer's testimony that the results of the HGN test administered to Stevens, coupled with statistics by the National Traffic Safety Institute, established that there was a 77 percent chance of the defendant being under the influence of alcohol. The record is clear that there was no objection by the defendant to the prosecutor's question that elicited this testimony and there was no objection or motion to strike the officer's testimony or conclusions concerning National Traffic Safety Institute statistics.

## III.

## THE INTRODUCTION OF THIS EVIDENCE BY THE PROSECUTION DID NOT CONSTITUTE PROSECUTORIAL MISCONDUCT WARRANTING A DISMISSAL OF THE CASE WITH PREJUDICE.

A. EVIDENCE OF A PERCENTAGE LIKELIHOOD OF INTOXICATION BASED SOLELY UPON A HORIZONTAL GAZE NYSTAGMUS (HGN) TEST WAS ADMISSIBLE FOR THE NARROW REASON THAT THE DEFENDANT NEITHER OBJECTED NOR MOVED TO STRIKE THIS EVIDENCE.

The general rule in Idaho is that an appellate court will not consider an alleged error on appeal in the absence of a timely objection to that alleged error at trial. *State v. Gish*, 87 Idaho 341, 353, 393 P.2d 342, 348 (1964). It follows that the evidence of a percentage likelihood of intoxication based solely upon a HGN test was admissible for the narrow reason that the defendant neither objected nor moved to strike this evidence.

B. THE INTRODUCTION OF THIS EVIDENCE DID NOT WARRANT THE DECLARATION OF A MISTRIAL.

The question that arises under these facts is whether Stevens can claim on appeal that

the presentation of this evidence to the jury constituted prosecutorial misconduct even though no objection was made to this evidence at the time since a failure to object at trial generally acts as a waiver of the error. *State v. Baruth,* 107 Idaho 651, 656, 691 P.2d 1266, 1271 (Ct.App.1984); *State v. Sharp,* 101 Idaho 498, 503, 616 P.2d 1034, 1039 (1980). This court has recognized that there is an exception to this general rule where the evidence is so inflammatory that the jury may be influenced to determine guilt on factors outside the evidence. *See State v. Spencer,* 74 Idaho 173, 258 P.2d 1147 (1953), where it was held that the failure to object to the closing arguments of a prosecuting attorney may not constitute a waiver of the objection "where the record shows that the prosecuting attorney has been guilty of misconduct calculated to inflame the minds of the jurors and arouse prejudice or passion against the accused by statements in his argument of facts not proved by evidence ..." 74 Idaho at 183–84, 258 P.2d at 1154.

In *State v. Garrett,* 119 Idaho 878, 811 P.2d 488 (1991), this Court concluded that "a positive HGN test result alone [was] not evidence of a certain degree of blood alcohol content" and that it was error for the trial court to allow testimony that the HGN test result was proof that Garrett's blood alcohol content was above the prescribed limit. However, in the light of the other field sobriety test results, it was held that this error was not reversible error even though no chemical analysis was performed. 119 Idaho at 882, 811 P.2d at 492.

 It must be noted that Stevens had not only performed other field sobriety tests, there was also the chemical analysis of his breath in two Intoximeter 3000 breath tests which evidenced a concentration of alcohol in his system above the legal limit set forth in I.C. § 18–8004. It follows that the admission of the officer's testimony could not reasonably be considered as "conduct calculated to inflame the minds of the jurors and arouse prejudice or passion against the accused" under the *Spencer* rule cited supra. Under the most adverse interpretation of the facts before the court, it was harmless error under the rule enunciated in *Garrett,* cited supra.

HGN test evidence was considered again by this Court in *State v. Gleason,* 123 Idaho 62, 844 P.2d 691 (1992), where it was held that the "trial court in this case did not venture beyond the permissive bounds of .*Garrett* when it allowed Deputy Wolfinger to testify that based on Gleason's performance on the HGN *and other tests,* Deputy Wolfinger was of the opinion that Gleason was intoxicated." 123 Idaho at 66, 844 P.2d at 695. (Emphasis in the original.)

The record does not reflect any reason for the trial court to conclude that the prosecutor, was intentionally presenting evidence that was improper under *Garrett* or *Gleason;* or, that it was presented for the purpose of inflaming the minds of the jurors and arousing prejudice or passion against the accused in violation of the *Spencer* rule, cited supra.

It follows that the introduction of this evidence did not warrant the declaration of a mistrial by the magistrate.

C. THE INTRODUCTION OF THIS EVIDENCE BY THE PROSECUTION DID NOT CONSTITUTE PROSECUTORIAL MISCONDUCT WARRANTING A DISMISSAL OF THE CASE WITH PREJUDICE.

The reasoning that is set forth at III B supra supporting the conclusion that the introduction of the evidence that the magistrate found objectionable did not warrant the declaration of a mistrial by the magistrate also establishes that there was no basis for the magistrate to enter a dismissal of this case.

## IV.

**THE MAGISTRATE'S DECLARATION OF MISTRIAL AFTER JEOPARDY HAD ATTACHED PREVENTS RE-TRIAL UNDER CONSTITUTIONAL PROHIBITIONS AGAINST DOUBLE JEOPARDY.**

A. JEOPARDY HAD ATTACHED IN THIS CASE BECAUSE A JURY HAD BEEN SWORN TO TRY THE CASE.

 It is clear under state and federal law that jeopardy had attached in this case be-

cause a jury had been sworn to try the case. *State v. Alanis,* 109 Idaho 884, 898, 712 P.2d 585, 599 (1985); *State v. Sharp,* 104 Idaho 691, 693, 662 P.2d 1135, 1137 (1983); *Crist v. Bretz,* 437 U.S. 28, 37–8, 98 S.Ct. 2156, 2161–62, 57 L.Ed.2d 24 (1978).

## B. STATEMENT OF GENERAL RULES MATERIAL TO ISSUE OF WHETHER THE TRIAL COURT'S *SUA SPONTE* DECLARATION OF A MISTRIAL BARS RETRIAL UNDER CONSTITUTIONAL PROHIBITIONS AGAINST DOUBLE JEOPARDY.

An ALR annotation by John E. Theuman, entitled *Former Jeopardy as Bar to Retrial of Criminal Defendant After Original Court's Sua Sponte Declaration of a Mistrial—State Cases,* 40 A.L.R.4th 741 (1985), is helpful in determining whether retrial of Stevens is prevented under constitutional prohibitions against double jeopardy. In material part it is stated therein:

It is a basic principle of American constitutional law, as it was of the English common law, that no person may be twice placed in jeopardy—that is, put on trial with the possibility of conviction and punishment—for the same criminal offense. Under the early common law, this meant that a criminal trial could not be terminated prior to the verdict for any reason without in effect acquitting and discharging the defendant, since any attempt to recommence the prosecution would be barred as double jeopardy. However, modern rules, recognizing that circumstances may arise in the course of a trial which make it impossible to continue the proceedings without serious prejudice to either or both parties, allow the judge to declare a mistrial in a proper case, at the request of the defense or prosecution or on his or her own motion, without prejudice to the right of the prosecution to seek a new trial.

*The basic rule is that criminal actions may be terminated by a mistrial without double jeopardy consequences if there is a sufficiently compelling reason to do so,* some procedural error or other problem obstructing a full and fair adjudication of the case *which is serious enough to outweigh the interest of the defendant in obtaining a final resolution of the charges against him—what is commonly termed a "manifest necessity" or "legal necessity."* The courts have generally declined to lay out any bright-line rule as to what constitutes "manifest necessity," but have based their decisions on the facts of each case, looking to such factors as whether the problem could be adequately resolved by any less drastic alternative action; whether it would necessarily have led to a reversal on appeal if the trial had continued and the defendant had been convicted; whether it reflected bad faith or oppressive conduct on the part of the prosecution; whether or not it had been declared in the interest of the defendant; and whether and to what extent the defendant would be prejudiced by a second trial. *Since the trial judge is ordinarily in the best position to observe the circumstances which allegedly call for a mistrial, his or her judgment as to the necessity for a mistrial is commonly deferred to; but that judgment may be set aside if the reviewing court finds that the judge has abused this discretionary power, particularly where it appears that the judge has not "scrupulously" exercised his or her discretion by making a full inquiry into all the pertinent circumstances and deliberately considering the options available. . . . .* (Emphasis added.)

\* \* \* \* \* \*

Aside from "manifest necessity," there are a few other situations in which a mistrial may be declared without giving the defendant a double jeopardy defense against further prosecution. *Just as a defendant may not complain of a mistrial which was declared on his or her own motion, so too any double jeopardy defense to retrial will be deemed waived if the defendant consents to the trial court's sua sponte declaration of a mistrial, either expressly or by clear implication, although a mere failure to specifically object to a mistrial, or a prior motion for mistrial on*

*other grounds, will not be considered as a consent to the judge's action, ...*

40 A.L.R.4th at 745–47. (Emphasis added.)

## C. THE TRIAL JUDGE DID NOT MAKE A FULL INQUIRY INTO ALL THE CIRCUMSTANCES NOR DELIBERATELY CONSIDER ALTERNATIVES TO DECLARING A MISTRIAL.

■ It was the magistrate's duty to obtain sufficient information to enable it to consider alternatives to a mistrial. *See State v. Nab,* 113 Idaho 168, 171, 742 P.2d 423, 426 (Ct. App.1987); *United States v. Jorn,* 400 U.S. 470, 485–86, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971); *Brady v. Samaha,* 667 F.2d 224 (1st Cir.1981). The record before the Court establishes that the trial judge *did not give counsel a meaningful opportunity to be heard on the issue of whether the perceived judicial misconduct of the prosecuting attorney was "serious enough to outweigh the interest of the defendant in obtaining a final resolution of the charges against him."* In this way he breached his duty by failing to obtain sufficient information to enable him to consider available alternatives to a mistrial.

In *Jorn,* cited *supra,* the court stressed the defendant's significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of a mistrial. 400 U.S. at 484–85, 91 S.Ct. at 557. As the court observed in *Curry v. Superior Court of San Francisco,* 2 Cal.3d 707, 470 P.2d 345 (1970), a defendant may choose not to move for or consent to a mistrial for many reasons: "he may be of the opinion that no error in fact occurred, or that any error that did occur was not prejudicial or could be cured by a motion to strike or a request for a cautionary instruction or could be refuted by impeachment of the witness or contrary defense evidence. Even when a palpably prejudicial error has been committed, stated the court, an accused may have valid personal reasons for preferring to go ahead with the trial rather than starting all over again, such as a desire to minimize the attendant embarrassment, expense and anxiety. These considerations, emphasized the court, are peculiarly within the knowledge of the accused, not the judge, and the latter must avoid depriving the accused of his constitutionally protected freedom of choice in the name of a paternalistic concern for his welfare." Alan R. Gilbert, Annotation, *Former Jeopardy; Propriety of Trial Court's Declaration of Mistrial or Discharge of Jury, Without Accused's Consent, on Ground of Prosecution's Disclosure of Prejudicial Matter to, or Making Prejudicial Remarks in Presence of Jury,* 77 A.L.R.3d 1143, 1154 (1977).

As stated on page 11 of Appellant's Reply Brief, "Clearly what is present in this case ... is the classic 'overbearing judge' case referenced in *Jorn* ... Rather the court *sua sponte* and without defense input or opportunity to deliberate and object declared a mistrial, dismissed the case and discharged the jury."

## D. THE RECORD DOES NOT DISCLOSE ANY "MANIFEST NECESSITY" FOR THE MAGISTRATE TO DECLARE A MISTRIAL AND DISMISS THIS ACTION.

The facts, reasoning and conclusions that are set forth at II, III A, B, and C, supra, support the further conclusion that there was no manifest necessity for the magistrate to declare a mistrial and enter a dismissal of this case.

## E. THERE HAS BEEN NO SHOWING BY THE STATE THAT THE DEFENDANT AND/OR HIS COUNSEL WAIVED ANY DOUBLE JEOPARDY DEFENSE BY EXPRESSLY OR BY CLEAR IMPLICATION CONSENTING TO THE MAGISTRATE'S SUA SPONTE DECLARATION OF A MISTRIAL AND DISMISSAL OF THIS ACTION.

■ The state argues that the defendant consented to a mistrial by (1) failing to object to the court's mistrial declaration; and (2) by making a prior unrelated motion for mistrial. The general rule, was indicated in the previously quoted annotation at 40 A.L.R.4th at 747, as follows:

[A] mere failure to specifically object to the mistrial, or a prior motion for a mistrial on other grounds, will not be considered as a consent to the judge's action..."

This rule is followed in Idaho.

In *State v. Werneth*, 101 Idaho 241, 611 P.2d 1026 (1980), the defendant was charged with embezzlement by a bailee in violation of I.C. § 18–2407. After jeopardy had attached, the state moved to amend the information to charge embezzlement by a corporate officer in violation of I.C. § 18–2402. Defense counsel objected and the trial judge denied the motion to amend. The state then moved to dismiss the suit. After a recess, defense counsel withdrew his objection. The motion to dismiss was then granted. Four days later the state charged Werneth with embezzlement by a corporate officer. The defendant filed a motion to dismiss claiming that a new trial would violate his right not to be placed in double jeopardy. The trial judge denied the motion on the ground that defense counsel had, in effect, consented to the previous dismissal by withdrawing his objection. Werneth was then found guilty of embezzlement by a corporate officer. Werneth appealed contending that he was denied his constitutional right not to be twice placed in jeopardy for the same criminal offense. This Court held that the withdrawal of the defendant's objection to dismissal of the charge of embezzlement by bailee did not constitute the clear and unequivocal action necessary to find that the defendant has consented to placing himself in double jeopardy stating:

> While something more than mere silence on the defendant's part must be shown to establish his consent to being placed in double jeopardy, the consent need not be express; rather it may be implied from a totality of circumstances.

101 Idaho at 242–43, 611 P.2d at 1027–28.

Stressing the view that consent to be placed in double jeopardy will not be lightly presumed, the court in *Curry v. Superior Court*, 2 Cal.3d 707, 87 Cal.Rptr. 361, 470 P.2d 345 (1970), stated: "It is true that affirmative conduct by the defendant may constitute a waiver if it clearly evidences consent...." 87 Cal.Rptr. at 364, 470 P.2d at

348. Idaho has consistently recognized the presumption against waiver of fundamental constitutional rights. (Citations omitted.)

The *Werneth* court then went on to affirm the result reached by the trial court on the ground that the two statutory offenses with which Werneth was charged did not constitute the same offense for double jeopardy purposes.

In *State v. Alanis*, 109 Idaho 884, 712 P.2d 585 (1985), the defendant moved to suppress all statements that she had made the day after she was arrested on a charge of first degree murder on the Friday before the Monday that trial was scheduled to commence. The state objected to the motion on the grounds that it was untimely under Rule 12(d) of the Idaho Criminal Rules. The court refused the state's request for additional time in the form of a continuance but did delay further argument until the following day at trial. In the meantime the jury was selected and sworn. The following day the court granted the motion to suppress after hearing oral argument outside of the presence of the jury. The jury was then recalled into the courtroom and, when asked to proceed, the state explained that it could not continue with the presentation of its case without the suppressed evidence. The state stated that it intended to appeal the court's order granting the motion to suppress pursuant to I.A.R. 11(c)(4). At that point, defense counsel moved for dismissal with prejudice. The court granted the motion, dismissed the case with prejudice, and acquitted Alanis of all charges. 109 Idaho at 886–87, 712 P.2d at 587–88. On appeal to this Supreme Court, a majority held that jeopardy had attached that precluded any further judicial proceedings even though the trial court erred in granting the defendant's motion to suppress. *Id.* at 888, 712 P.2d at 589.

This general rule is also supported by federal law.

In *United States v. Jorn, supra*, the trial judge declared a mistrial and discharged the jury on his own motion to enable government witnesses to consult with their own attorneys. The case was set for trial before another jury, but dismissed on the defendant's

motion on the ground of former jeopardy. On appeal to the United States Supreme Court, the majority held that the trial judge had abused his discretion in discharging the jury and that a second prosecution of the defendant would violate the double jeopardy provision of the Fifth Amendment since (1) there was no "manifest necessity" for discharging the jury to enable the witnesses to consult with their attorneys, (2) no motion for mistrial by the defendant, and (3) the mistrial was not made "in the sole interest of the defendant." *See Gori v. United States,* 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961).

■ This Court is not persuaded by the authorities cited by the state in support of its contention that Stevens, either individually or through his attorney, consented to placing himself in double jeopardy. The state's reliance upon *United States v. Buljubasic,* 808 F.2d 1260 (7th Cir.1987), is clearly misplaced. In *Buljubasic,* the defendant had moved for mistrial on numerous occasions during the trial and his motions had been properly denied. It subsequently became apparent that there was conflict between defenses and the trial judge severed defendant's case from that of a co-defendant and granted mistrial as to that defendant, stating that she was granting defendant's pending motion, and the defendant did not tell the judge that he had changed his mind. Under these circumstances, the court was entitled to treat mistrial as consensual, and the double jeopardy clause did not bar retrial.

A failure to object coupled with a waiver of the speedy trial and agreeing to a second trial date was sufficient to support the defendant's implied consent to the court's declaration of a mistrial where the record provided adequate justification for the trial court's ruling in *Camden v. Circuit Court,* 892 F.2d 610 (7th Cir.1989), *cert. denied,* 495 U.S. 921, 110 S.Ct. 1954, 109 L.Ed.2d 316 (1990).

In *State v. Tolliver,* 839 S.W.2d 296, 299 (Mo.1992), the state's violation of the court's Order in Limine, the defendant's objection and motion for dismissal with prejudice was sufficient to support an implied consent to a mistrial where it was held that the defendant had an ample opportunity to inform the court of his desire to proceed with the case.

In *People ex rel. Mosley v. Carey,* 74 Ill.2d 527, 25 Ill.Dec. 669, 387 N.E.2d 325 (1979), *cert. denied,* 444 U.S. 940, 100 S.Ct. 292, 62 L.Ed.2d 306 (1979), the defendant had requested a mistrial on four separate occasions. The court finally agreed to declare a mistrial. The defendant then objected arguing that the problem could be dealt with by sequestering the jury. The court was in the process of considering this alternative when the defendant withdrew his objection to the court declaring a mistrial. On appeal, it was held that "the mistrial resulted from the defendant's repeated requests or, at the minimum, to have been declared with his consent" and the defendant's double jeopardy plea was properly denied.

In *State v. Knight,* 616 S.W.2d 593 (Tenn. 1981), the defendant moved for dismissal on the ground of variance between the indictment and the evidence. During the course of his argument on this motion, defense counsel stated:

> Now he cannot show that any of these elements happened in Knox County, Tennessee. We say the State hasn't got a case in Blount or Knox County as a result of this indictment ...

616 S.W.2d at 594. The trial court denied defense counsel's motion for acquittal on grounds of variance. During further argument on the venue issue, defendant renewed his motion for judgment of acquittal on the ground of variance three times and this colloquy between the court and defense counsel occurred:

> Defense counsel: Your Honor, we are insistent that the Court enter a judgment of acquittal.
>
> Court: I am not going to enter a judgment of acquittal. I am going to dismiss the case on the fact that the state is in the wrong county.
>
> Defense counsel: The defendant excepts to the Court's ruling, *not as to the venue question,* but as to the indictment. (Emphasis added.)

*Id.* On appeal it was held that the defendant's failure to object to the court's declaration of mistrial under these circumstances

did not preclude a subsequent trial on the grounds of double jeopardy.

The court declared a mistrial because of serious prejudicial error by the Government in *United States v. DiPietro*, 936 F.2d 6 (1st Cir.1991). Before doing so the court met with counsel and had the reporter read back the government's rebuttal argument which was in question. The court, after considering the issue in chambers, met with counsel again, explained on the record the error and his conclusion that a curative instruction requested by the defendant would not have cured the error and declared a mistrial. The defendant made no objection to the mistrial but did renew the defendant's motion for Judgment of Acquittal and then participated with the court and the government in setting a new trial date. Subsequently a Motion to Dismiss on the grounds of double jeopardy was filed, argued and denied. On appeal it was held under these facts that the double jeopardy clause did not bar retrial where there was no objection by the defendant despite ample opportunity to do so.

All of these cases are distinguishable from the facts in this case. In each case there are facts which establish some affirmative conduct on the part of the defendant or his attorney from which consent can be implied. Furthermore, there was adequate justification for the court's declaration of a mistrial in many of these cases.

Here, there was no manifest necessity for the *sua sponte* declaration of a mistrial and dismissal of the case by the trial judge. There was no connection between the defendant's earlier motion for dismissal and the trial court's declaration of a mistrial and dismissal of the action. There are no facts establishing affirmative conduct on the part of the defendant or his attorney from which consent to mistrial may be implied. The court made no inquiry into all the pertinent circumstances so that a deliberate consideration of the available options could be made with the participation of counsel. Counsel had no meaningful opportunity to be heard. There was no showing of bad faith or oppressive conduct on the part of the prosecutor.

## V.

## CONCLUSION

In summary, the record before this Court *does not* support the conclusion that Stevens and/or his attorney expressly or impliedly waived his right to be tried by the then existing tribunal by some affirmative action which clearly evidenced his consent to being retried before another tribunal. Therefore, the trial court's declaration of a mistrial and dismissal of the DUI charges against the defendant after jeopardy had attached prevents retrial based on the federal and Idaho constitutional prohibitions against double jeopardy.

The foregoing ruling is dispositive of all remaining issues in this case. Therefore no further discussion is required.

The district court's finding that the trial court abused its discretion in declaring a mistrial and dismissing this action is hereby affirmed. That portion of the district court's decision which directs a retrial in the magistrate's court is hereby reversed because a further trial would constitute double jeopardy barred under federal and state constitutional law.

McDEVITT, C.J., and JOHNSON and TROUT, JJ., concur.

SILAK, Justice, specially concurring:

My special concurrence is addressed to the Court's decision of the double jeopardy issue.

The Court's opinion states, quoting the appellant's reply brief, that the facts presented here amount to the same classic case of the "overbearing" judge as presented in United *States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). I cannot agree with the Court's conclusion in this regard. The *Jorn* opinion reveals that the district court judge set off on his own course of questioning whether the government's witnesses had been adequately apprised of their constitutional rights, and refused to permit them to testify. During the course of questioning the prosecutor in this regard, the judge abruptly cut off the prosecutor and immediately discharged the jury. The Supreme Court stated that

"It is apparent from the record that no consideration was given to the possibility of a trial continuance; indeed, the trial judge acted so abruptly in discharging the jury that, had the prosecutor been disposed to suggest a continuance, or the defendant to object to the discharge of the jury, there would have been no opportunity to do so."

400 U.S. at 487, 91 S.Ct. at 558. This conduct by the judge was correctly characterized as "overbearing" in *United States v. Buljubasic,* 808 F.2d 1260, 1265 (7th Cir. 1987).

The record here, however, does not support the Court's characterization of the magistrate judge as overbearing. The magistrate engaged in a colloquy, outside the presence of the jury, with the prosecutor and defense counsel over defense counsel's objection as to the "speculative" nature of the testimony regarding the relative reliability of certain field sobriety tests. After listening to the basis for defense counsel's objection, the judge queried the prosecutor regarding the legal basis for the proffered testimony, and discussed appellate precedents. The magistrate then stated his intention to grant a mistrial, and after further colloquy from the prosecutor as to the trial testimony, as well as questions from the prosecutor about the court's proposed course of action and the legal basis for it, the magistrate stated he was granting the mistrial due to prosecutorial misconduct. The prosecutor registered the state's exception to the mistrial. This record stands in contrast to *Jorn, supra,* where neither counsel had the opportunity to comment on or object to the judge's discharge of the jury.

Moreover, the Court does not need to reach the "overbearing" judge issue in order to reach the conclusion that the defendant did not consent to the mistrial. *State v. Werneth,* 101 Idaho 241, 611 P.2d 1026 (1980), held that a defendant's consent to the declaration of mistrial need not be express, but "may be implied from all the circumstances." 101 Idaho at 242–43, 611 P.2d at 1027–28. *See United States v. Buljubasic,* 808 F.2d at 1265 (defendant may still be determined to have given consent even where

suggestion for mistrial originates with the trial judge); *United States v. DiPietro,* 936 F.2d 6, 9–10 (1st Cir.1991) (consent to a mistrial may be inferred from silence where a defendant had the opportunity to object and failed to do so.) The Court need not make the determination that the magistrate judge here fell within the definition of the classic overbearing judge. As to the judge's conduct, it is enough to note that the judge *sua sponte* declared a mistrial. The proper focus then is whether from all the circumstances the defendant's consent to mistrial could be implied.

I agree with the Court's conclusion that there has been no showing by the state of express or clear implication of consent. The state here bears the burden on the issue of consent, and given that burden I agree that no consent has been shown.