**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40950**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2014 Opinion No. 37** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: May 6, 2014** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **MARK CHRISTOPHER HUNTER,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Kathryn A. Sticklen, District Judge. Hon. L. Kevin Swain, Magistrate.

Decision of the district court, in its appellate capacity, reversing magistrate's order granting motion to suppress, <u>affirmed</u> and <u>remanded</u> to magistrate court for further proceedings.

Alan Trimming, Ada County Public Defender; Erik J. O'Daniel, Deputy Public Defender, Boise, for appellant. Erik J. O'Daniel argued.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent. Lori A. Fleming argued.

SCHWARTZMAN, Judge Pro Tem

Mark Christopher Hunter appeals from the district court's intermediate appellate decision reversing the magistrate's order granting his motion to suppress evidence. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties stipulated to the following facts. Shortly after midnight, an officer stopped Hunter for driving several blocks without headlights. The officer smelled the odor of alcohol coming from the vehicle. Hunter admitted he had been drinking that night; the female passenger in the vehicle appeared to be heavily intoxicated. The officer checked Hunter's eyes and

1

observed nystagmus.[1]  He then requested the assistance of a Safety Traffic Enforcement Program (STEP) officer[2] to help in the investigation.  Officer Robert Gibson arrived to administer field sobriety tests and had Hunter exit the vehicle.  Hunter told the officer he was coming from a bar and had earlier watched MMA fights at an arena.  He also admitted to drinking three vodka tonics between 7:30 p.m. and 10:30 p.m.  Officer Gibson smelled the odor of alcohol coming from Hunter and observed that Hunter's eyes were glassy and bloodshot.

Officer Gibson had Hunter perform several sobriety tests on the sidewalk.  Hunter indicated that he was not taking any medications and did not have any physical impairment.  Officer Gibson conducted the horizontal gaze nystagmus (HGN) test.  Neither of Hunter's eyes pursued smoothly and his eyes had distinct and sustained nystagmus.  Officer Gibson testified that Hunter scored six out of six points on the HGN test.  The officer then directed Hunter to perform the walk-and-turn test.  This test has a maximum of eight errors, with two or more points qualifying as a failure.  Hunter did not score any errors.  Officer Gibson then demonstrated the one-leg-stand test.  Hunter swayed during the test, but he did not register any other errors.  This test has a maximum of four errors, with two or more points qualifying as a failure.  Officer Gibson then re-administered the HGN test and Hunter had the same scoring as before.  Hunter cooperated throughout the tests.  The officer arrested Hunter and secured him in the back of the patrol car.  A breath test was conducted which registered a breath alcohol concentration of .090 and .088.

At the motion to suppress hearing, Officer Gibson testified that his training and experience included completing Idaho POST Academy, attending the Boise Police Advanced Academy Field Training Program, as well as almost five years of on-the-job experience, which included several hundred DUI investigations.  Finally, the officer testified that he had completed a class for advanced roadside impairment and breath testing specialist.

---

[1]  "Nystagmus" is a term used to describe an involuntary jerking of the eyeball, a condition that may be aggravated by the effect of chemical depressants on the central nervous system.  An inability of the eyes to maintain visual fixation as they are turned from side to side is known as "horizontal gaze nystagmus."
*State v. Garrett*, 119 Idaho 878, 880-81, 811 P.2d 488, 490-91 (1991) (citations omitted) (quoting *State v. Murphy*, 451 N.W.2d 154, 156 (Iowa 1990)).

[2]  A STEP officer "is specially trained in the detection and investigation of driving under the influence cases."  *State v. Hogan*, 132 Idaho 412, 413, 973 P.2d 764, 765 (Ct. App. 1999).

The State charged Hunter with driving under the influence. Hunter moved to suppress the breath test. The magistrate granted the motion, concluding that the officer lacked probable cause to place Hunter under arrest. The State appealed and the district court reversed the magistrate's order. Hunter now appeals.

## II.

## ANALYSIS

When reviewing the decision of a district court sitting in its appellate capacity, we review the magistrate court's findings of fact to determine if they are supported by substantial and competent evidence. We then determine if the findings support the magistrate's conclusions of law. Based on the district court's review of the magistrate court's decision, procedurally we either affirm or reverse the district court's decision. *Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.3d 214, 217-18 (2013). The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The Fourth Amendment to the United States Constitution protects the right of the people to be free from unreasonable searches and seizures, "and no Warrants shall issue, but upon probable cause . . . ." U.S. CONST. amend. IV. When seizure occurs without a warrant, the government bears the burden of proving facts necessary to establish an exception to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971); *State v. Dycus*, 154 Idaho 456, 459, 299 P.3d 263, 266 (Ct. App. 2013). Evidence obtained in violation of these constitutional protections must be suppressed in a criminal prosecution of the person whose rights were violated. *Dycus*, 154 Idaho at 459, 299 P.3d at 266. "A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003); *see also* Idaho Code § 19-603. We freely

review, de novo, the trial court's legal conclusion of whether the facts established probable cause to support an arrest. *See State v. Bainbridge*, 117 Idaho 245, 247, 787 P.2d 231, 233 (1990).

Probable cause is "the possession of information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong presumption that such person is guilty." *State v. Julian*, 129 Idaho 133, 136, 922 P.2d 1059, 1062 (1996). In analyzing whether probable cause existed, this Court must determine whether the facts available to the officers at the moment of the seizure warranted a person of reasonable caution to believe that the action taken was appropriate. *Id.*; *State v. Hobson*, 95 Idaho 920, 925, 523 P.2d 523, 528 (1974). The application of probable cause to arrest must allow room for some mistakes by the arresting officer; however, the mistakes must be those of reasonable persons, acting on facts leading sensibly to their conclusion of probability. *Klinger v. United States,* 409 F.2d 299, 304 (8th Cir. 1969); *Julian*, 129 Idaho at 137, 922 P.2d at 1063. The facts making up a probable cause determination are viewed from an objective standpoint. *Julian*, 129 Idaho at 136-37, 922 P.2d at 1062-63. In passing on the question of probable cause, the expertise and the experience of the officer must be taken into account. *State v. Ramirez*, 121 Idaho 319, 323, 824 P.2d 894, 898 (Ct. App. 1991). In evaluating whether the State has met this practical and common-sense standard, the totality of the circumstances is considered. *Pringle*, 540 U.S. at 371.

"The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Pringle*, 540 U.S. at 371. "There is a large difference between the two things to be proved [guilt and probable cause], as well as between the tribunals which determine them, and therefore a like difference in the *quanta* and modes of proof required to establish them."[3] *Draper v. United States*, 358 U.S. 307, 312 (1959) (quoting *Brinegar v. United States*, 338 U.S. 160, 173 (1949)). Thus, "[f]inely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the [probable cause] decision." *Illinois v. Gates*, 462 U.S. 213, 235 (1983).

---

[3] "'[P]robable cause' does not include or measure up to satisfaction 'beyond a reasonable doubt.' They are widely different. 'Beyond a reasonable doubt' may be likened to the summit of a high mountain, and 'probable cause' to a halfway station on the mountain side . . . ." *State v. Arregui*, 44 Idaho 43, 63, 254 P. 788, 794 (1927) (quoting *United States v. McGuire*, 300 F. 98, 102 (N.D.N.Y. 1924)).

Probable cause standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. *Brinegar*, 338 U.S. at 176. "The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." *Id.*

In its Memorandum Decision, the magistrate found:

> It is clear Officer Gibson relied heavily on the defendant's failure of the HGN test in making his decision to arrest. Officer Gibson testified he places more importance on that test because the subject cannot practice for the test. This does not comport with the applicable law concerning the reliability of the HGN test.

Relying on its interpretation of *State v. Garrett*, 119 Idaho 878, 811 P.2d 488 (1991), the court concluded:

> Here the other field sobriety tests not only failed to corroborate the HGN test, they completely contradicted it. The defendant demonstrated virtually no impairment when performing the one leg stand and no impairment at all when performing the walk and turn test. The results of those tests rendered the HGN test *unreliable as a matter of law*. The remaining factors considered by the officer, even taken together, fail to rise to the level of probable cause to support an arrest.

(Emphasis added.)

We find this interpretation of *Garrett* unduly restrictive. *Garrett* holds that HGN test results may not be used at trial to establish a defendant's blood alcohol level in the absence of chemical analysis of his blood, breath, or urine. *Garrett*, 119 Idaho at 881, 811 P.2d at 491. While the theory underlying the HGN test is sound, the test results may only be used to draw certain inferences. As circumstantial evidence of intoxication, a positive HGN test result alone is not evidence of a certain level of blood alcohol content. *Id.* at 882, 811 P.2d at 492. By way of dicta, the Court also noted that "in conjunction with other field sobriety tests, a positive HGN test result does supply probable cause for arrest, standing alone that result does not provide proof positive of DUI, because many other factors may cause nystagmus." *Id.* at 881, 811 P.2d at 491.

After reviewing the information available to Officer Gibson, including the HGN test results, we hold that under the totality of circumstances the officer had probable cause to arrest

5

Hunter for DUI. *See generally State v. Martinez-Gonzalez*, 152 Idaho 775, 779-80, 275 P.3d 1, 5-6 (Ct. App. 2012) (reviewing probable cause to arrest for DUI and examining many other case scenarios). Hunter had driven several blocks without headlights. The officer who stopped Hunter could smell the odor of alcohol coming from the open driver-side window and Hunter told the officer he had been drinking. This officer also observed nystagmus in Hunter's eyes. The female passenger appeared to be heavily intoxicated. Once Hunter exited the vehicle, Officer Gibson could smell the odor of alcohol coming from Hunter. The officer observed that Hunter's eyes were glassy and bloodshot. Hunter told the officer that he was coming from a bar and that he had consumed three vodka tonics that night. Hunter failed the HGN test, scoring the maximum points allowed. Officer Gibson later confirmed the HGN results by administering the test for a second time. Hunter also swayed during the one-leg-stand test. Finally, Officer Gibson had specialized training in DUI cases and had conducted several hundred DUI investigations.

Though Hunter did not fail each of the field sobriety tests, the remaining information was sufficient to supply probable cause. This is especially true because I.C. § 18-8004(1)(a) establishes a per se alcohol concentration violation. An individual who has become more tolerant to alcohol may not exhibit the same observable functional impairment at the per se legal limit as others. Thus, under the totality of circumstances, an officer is not required to ignore other indicia of intoxication when an individual partially performs well on field sobriety tests. Because Officer Gibson had probable cause to arrest, the breath alcohol evidence recovered after the arrest should not have been suppressed.[4]

### III.

### CONCLUSION

The evidence was obtained while Hunter was lawfully arrested. Accordingly, the district court's order reversing the magistrate's decision is affirmed, and the case is remanded to the magistrate court for further proceedings.

Chief Judge GUTIERREZ and Judge LANSING **CONCUR.**

---

[4] Hunter argues that the HGN test is less reliable because nystagmus can be naturally occurring. However, the existence of an alternative innocent explanation does not negate the information available establishing probable cause to believe Hunter was driving while intoxicated. *See State v. Rader*, 135 Idaho 273, 276, 16 P.3d 949, 952 (Ct. App. 2000) (finding that the existence of alternative explanations did not negate the officer's reasonable suspicion).