# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 50557

STATE OF IDAHO,

        Plaintiff-Respondent,

v.

KEVIN MANUEL CABRITO,

        Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

Filed: September 18, 2024

Melanie Gagnepain, Clerk

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Blaine County. Hon. Ned C. Williamson, District Judge.

Judgment of conviction for felony possession of a controlled substance, misdemeanor possession of a controlled substance, and inattentive driving, <u>affirmed</u>.

Andrew Parnes, Ketchum, for appellant.

Hon. Raúl R. Labrador, Attorney General; Amy J. Lavin, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Judge

Kevin Manuel Cabrito appeals from his judgment of conviction for felony possession of a controlled substance, misdemeanor possession of a controlled substance, and inattentive driving. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours, an officer observed Cabrito driving a vehicle without its headlights on. The officer initiated a traffic stop and Cabrito pulled over to the side of the roadway. However, in doing so, Cabrito drove onto the sidewalk, positioning both of his passenger-side tires onto it. Upon approaching the driver's window, the officer smelled an odor of alcohol and noticed

1

Cabrito's glassy, bloodshot eyes. The officer also saw two cups in the vehicle; the passenger told the officer both cups belonged to him. When asked, Cabrito denied having anything to drink that evening. The officer informed Cabrito that he had reason to believe Cabrito had been drinking based upon his driving pattern, the odor of alcohol, the open containers, and his glassy eyes. The officer asked Cabrito to exit his vehicle so the officer could administer field sobriety testing.

Cabrito submitted to three field sobriety tests and ultimately failed the horizontal gaze nystagmus (HGN) test. Following the tests, the officer again asked Cabrito if he had consumed any alcohol. This time, Cabrito admitted to drinking one beer earlier that evening. Based on the officer's observations and Cabrito's failure of the HGN test, the officer asked Cabrito to submit to a breath test. The prerequisite to testing involved having Cabrito sit in the back of the officer's patrol car to listen to the pretest advisory and wait for the fifteen-minute observation period prior to administration of the breath test. Before placing Cabrito in his patrol car, the officer handcuffed Cabrito, informed him he was being detained, and patted him down. The pat down of Cabrito revealed a pipe in Cabrito's pocket, which appeared to contain a marijuana cartridge. Following the fifteen-minute observation period, the officer administered a breath alcohol concentration (BAC) test. The results of the test showed Cabrito's alcohol concentration was 0.110 and 0.108. The officer read Cabrito his *Miranda*[1] rights and arrested him for driving under the influence (DUI) and possession of marijuana. Thereafter, during an inventory search incident to Cabrito's arrest, the officer found additional marijuana products in the vehicle, as well as cocaine inside Cabrito's wallet.

The State charged Cabrito with felony possession of cocaine, misdemeanor possession of marijuana, possession of drug paraphernalia, and DUI. Cabrito filed a motion to suppress the contraband that was found. Following a hearing, the district court denied the motion. Thereafter, Cabrito entered a conditional guilty plea to possession of a controlled substance (I.C. § 37-2732(c)(1)), possession of marijuana (I.C. § 37-2732(c)(3)), and an amended charge of inattentive driving (I.C. § 49-1401(3)), specifically reserving his right to appeal the denial of his motion to suppress. Cabrito appeals.

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1996).

2

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Cabrito asserts the district court erred in denying his motion to suppress. Specifically, Cabrito argues the officer did not have reasonable suspicion to extend the traffic stop and investigate Cabrito for DUI. Cabrito also contends his detention evolved into a de facto arrest when the officer handcuffed and searched Cabrito before placing him in the patrol vehicle prior to the BAC test. Relatedly, Cabrito argues the officer did not have probable cause to arrest Cabrito before he was handcuffed and submitted to the BAC test. The State responds that the record and applicable law support the district court's denial of Cabrito's motion to suppress. We hold that Cabrito has failed to show the district court erred in denying his motion to suppress.

### A.      Reasonable Suspicion

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). In the traffic stop context, authority for a seizure ends when the tasks related to the stop are, or reasonably should have been, completed. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Tasks related to a traffic stop include addressing

3

the traffic violation that precipitated the stop; determining whether to issue a traffic ticket; and making inquiries incident to the traffic stop, such as checking the driver's license, inspecting the vehicle's proof of insurance and registration, and conducting a criminal record check of the driver. *Rodriguez v. United States*, 575 U.S. 348, 354-55 (2015); *State v. Hale*, 168 Idaho 863, 867, 489 P.3d 450, 454 (2021). Officers may not deviate from the purpose of a traffic stop by investigating (or taking safety precautions incident to investigating) other crimes without reasonable suspicion. *See Rodriguez*, 575 U.S. at 356. The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id*. An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988).

However, the justification for a motorist's detention is not permanently fixed at the moment the traffic stop is initiated. *State v. Wigginton*, 142 Idaho 180, 183, 125 P.3d 536, 539 (Ct. App. 2005). An officer's observations, general inquiries, and events succeeding the stop may--and often do--give rise to legitimate reasons for particularized lines of inquiry and further investigation by an officer. *State v. Myers*, 118 Idaho 608, 613, 798 P.2d 453, 458 (Ct. App. 1990). Furthermore, even without reasonable suspicion, officers may engage in lines of investigation unrelated to an otherwise lawful traffic stop as long as doing so does not prolong the stop. *See Caballes*, 543 U.S. at 409 (holding that a dog sniff conducted during an otherwise lawful traffic stop does not violate the Fourth Amendment); *Hale*, 168 Idaho at 867, 489 P.3d at 454 (recognizing the officers may "conduct certain unrelated checks" during a traffic stop).

In this case, the district court found there was reasonable and articulable suspicion to support the officer's request that Cabrito exit his vehicle and submit to field sobriety testing. While Cabrito was initially pulled over for a traffic violation (driving without headlights), the district court found the initial stop "seamlessly turned into an investigative detention based [upon] a reasonable suspicion that Cabrito was driving under the influence." The officer observed Cabrito pulling out from a parking lot without his vehicle's headlights on. As the officer initiated the traffic stop, "Cabrito pulled over, but in doing so, drove onto the sidewalk." Moreover, the officer

4

saw two open containers in Cabrito's vehicle, smelled alcohol coming from the vehicle's interior, "and noticed Cabrito had glassy, bloodshot eyes." The officer knew that Cabrito and his passenger had previously been at a bar and that the passenger had been drinking. "Based on the totality of the circumstances and taken as a whole," the district court found these facts gave "rise to sufficient reasonable suspicion for [field sobriety testing]."

On appeal, Cabrito does not challenge the initial detention and concedes the officer had reasonable suspicion to stop Cabrito for driving without headlights. Instead, Cabrito contends the officer impermissibly prolonged the initial traffic stop, resulting in an illegal detention. According to Cabrito, "the facts known to the officer at the time he ordered [Cabrito] out of the [vehicle] were insufficient to support reasonable suspicion to extend the stop to investigate a possible DUI." As such, Cabrito asserts "all evidence acquired after [Cabrito] was ordered out of the [vehicle] should have been suppressed." We disagree.

The record shows that the officer had not yet completed the purpose of the traffic stop when he witnessed some of the facts that gave rise to his reasonable suspicion that Cabrito may have been driving while under the influence. Cabrito asserts the officer did not have reasonable suspicion because the officer "had observed no pattern of driving to support a DUI investigation." However, the record shows the officer observed two driving patterns: (1) Cabrito failed to turn on the vehicle's headlights while he drove the vehicle; and (2) Cabrito drove onto the sidewalk as he pulled over. Cabrito also argues the officer did not have reasonable suspicion because Cabrito was compliant and "handed over his license, registration and insurance, spoke coherently and did not slur his words." That Cabrito complied with the officer's requests and did not slur his words during the traffic stop does not negate the officer's reasonable suspicion based on all the information available to him as the stop unfolded. Further, Cabrito's assertion that the odor of alcohol "was easily explained by the passenger's admitted alcohol consumption and possession of the open containers" is unpersuasive and contrary to precedent establishing that an innocent explanation does not require an officer to ignore a relevant circumstance. *See State v. Stonecypher*, 170 Idaho 156, 160, 508 P.3d 1230, 1234 (2022) (holding that the existence of alternative innocent explanations does not necessarily negate reasonable suspicion). Cabrito has failed to show the district court erred in finding that the officer had reasonable suspicion to investigate Cabrito for DUI.

5

**B.     De Facto Arrest**

A seizure may take the form of either an arrest or an investigative detention. *State v. Stewart*, 145 Idaho 641, 644, 181 P.3d 1249, 1252 (2008). An arrest is a full-scale seizure of a person which, in some circumstances, is permitted without a warrant if the officer has probable cause to believe that the individual has committed a crime. *Id*.; *Ferreira*, 133 Idaho at 479, 988 P.2d at 705; *State v. Zapp*, 108 Idaho 723, 726-27, 701 P.2d 671, 674-75 (Ct. App. 1985). An investigative detention is a seizure of limited duration to investigate suspected criminal activity that does not offend the Fourth Amendment if the facts available to the officer at the time gave rise to reasonable suspicion to believe that criminal activity was afoot. *Stewart*, 145 Idaho at 644, 181 P.3d at 1252. An investigative detention based on reasonable suspicion must be conducted in a manner that is reasonably related in scope to the circumstances which justified the interference in the first place. *Id*. at 644-45, 181 P.3d at 1252-53. The term "de facto arrest" describes a seizure of an individual that becomes so intrusive in manner and/or length that it exceeds the bounds of an investigative detention. *See United States v. Sharpe*, 470 U.S. 675, 682-86 (1985); *State v. Frank*, 133 Idaho 364, 367-69, 986 P.2d 1030, 1033-35 (Ct. App. 1999).

Whether the Fourth Amendment is violated during the course of an investigatory detention is not automatically answered by the assessment of whether police tactics did or did not amount to a "de facto" arrest. *Stewart*, 145 Idaho at 645, 181 P.3d at 1253. There is no bright-line rule to determine when an investigatory detention transforms into an arrest. *Frank*, 133 Idaho at 367-68, 986 P.2d at 1033-34. Courts must consider all the surrounding circumstances and determine whether the investigative methods employed were the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. *Id.* 133 Idaho at 369, 986 P.2d at 1035. Additional factors to consider in distinguishing an investigative detention from an arrest include: (1) the seriousness of the crime; (2) the location of the encounter; (3) the length of the detention; (4) the reasonableness of the officer's display of force; and (5) the conduct of the suspect as the encounter unfolds. *Id*. at 368, 986 P.2d 1034. These illustrative factors can serve as guideposts, but ultimately, "common sense and ordinary human experience must govern over rigid criteria." *State v. Buti*, 131 Idaho 793, 796, 964 P.2d 660, 663 (1998).

In this case, the district court found there was no de facto arrest and that Cabrito was merely being detained during the fifteen-minute observation period. The district court also found the

officer "acted reasonably by handcuffing Cabrito and placing him in the vehicle for the administration of the breath tests." The district court found that the officer employed "the least intrusive means reasonably available to verify his suspicion that Cabrito was under the influence of alcohol" because "a breath test is far less intrusive than a blood draw." The district court noted that, while an additional officer was also present at the scene, that officer remained with Cabrito's passenger during the fifteen-minute observation period. Accordingly, the district court found it reasonable for the officer to confine Cabrito to one place during the observation period "to better monitor him while simultaneously setting up the breath-testing device." Additionally, the district court cited practical reasons justifying the officer's confinement of Cabrito and use of handcuffs. Given that "Cabrito was in the patrol vehicle with the back window rolled down," the district court found it reasonable to place him in handcuffs "as a safety consideration." Further, placing Cabrito in handcuffs ensured "that he did not dispose of anything illegal while waiting the fifteen-minutes in the back of the vehicle." The district court also found that the officer "conducted the investigation in as short of a time as reasonably possible." The district court thus determined that, "while there are likely some alternative means by which [the officer] could have dispelled his suspicion" that Cabrito was driving under the influence, the investigative methods employed were reasonable.

On appeal, Cabrito asserts he was subjected to a de facto arrest when the officer placed Cabrito in handcuffs and searched him in preparation for the breath alcohol test. Cabrito argues that, because there was no reason why the BAC test could not have been administered outside of the patrol vehicle, "there was no specific justification to support handcuffing" him. We disagree. The record shows that the officer's use of handcuffs and decision to place Cabrito in the back of the patrol vehicle was reasonable. Moreover, the Idaho Supreme Court has held courts should be careful not to second-guess a police officer's reasonable investigatory techniques. *See Buti*, 131 Idaho at 797, 964 P.2d at 664 (stating that "the protection of the public might, in the abstract, have been accomplished by less intrusive means, does not, itself, render the search unreasonable" and that "the question is not simply whether some other alternative was available, but whether the police acted reasonably in failing to recognize or pursue it"). Cabrito has failed to show an officer's use of handcuffs and placement of a driver in the back of the patrol vehicle prior to and for the purpose of facilitating a BAC test as part of a DUI investigation is unreasonable.

The district court also evaluated the additional factors outlined in *Frank* and ultimately found that "Cabrito was not arrested until after he provided breath alcohol samples over the legal limit." The district court, citing Idaho Supreme Court case law, determined that the State's interest in stopping drunk driving is compelling and that, without question, the drunk driver is one of society's greatest concerns. *See State v. Henderson*, 114 Idaho 293, 295, 756 P.2d 1057, 1059 (1988); *Ferreira*, 133 Idaho at 490, 988 P.2d at 706. Accordingly, the district court determined the seriousness of the crime "weighs against a finding of arrest." Next, the district court evaluated the location of the encounter and noted "that part of the encounter took place inside of [the officer's] vehicle." While the encounter inside the patrol vehicle demonstrated "a show of authority," the district court did not find this fact dispositive. Rather, the district court found that "it was undoubtedly easier for [the officer] to . . . keep an eye on Cabrito during the fifteen-minute-monitoring period inside of a patrol vehicle," as opposed to outside on the side of the road. The district court therefore found this factor weighed "slightly against a finding of arrest." The district court then evaluated the length of the detention and determined Cabrito's detention "was temporary, lasting no longer than necessary to effectuate the purpose of the encounter" and "lasted about forty-one minutes." Based on a review of the officer's body camera footage, the district court found the officer "acted quickly and diligently in an attempt to confirm his suspicion that Cabrito was under the influence of alcohol." Accordingly, the district court found "this factor weighs against a finding of arrest."

Thereafter, the district court evaluated the reasonableness of the officer's display of force and found his use of handcuffs "was a reasonable precaution." The duration of the investigation "was not prolonged by the additional restriction," and the district court found the officer's use of handcuffs "may have ensured that the investigatory process ran smoother." Additionally, while there were two officers present during the traffic stop, only one officer interacted with Cabrito. The district court cited additional practical reasons that made it reasonable for the officer to use handcuffs, "such as [the officer's] safety and restricting Cabrito's ability to dispose of illegal substances." Thus, while "handcuffs are normally associated with an arrest," the district court found this factor "weighs slightly against a finding of arrest." Regarding Cabrito's behavior as the encounter unfolded, the district court found that, "even though Cabrito was initially deceptive, he did cooperate with [the officer] during the investigatory detention." As such, the district court

8

found "this factor weighs in favor of finding an arrest." Taken as a whole, the district court determined the *Frank* factors weighed "in favor of finding an investigative detention." *See Frank*, 133 Idaho at 364-69, 986 P.2d at 1031-35. Accordingly, "based on the totality of the circumstances, common sense and ordinary human experience," the district court found the officer "acted reasonably by placing Cabrito in handcuffs and in his patrol vehicle to verify or dispel his suspicion in a short period of time."

On appeal, Cabrito contends the district court erred in balancing the *Frank* factors and argues said factors support a finding of a de facto arrest. More specifically, Cabrito argues the district court's finding that "the seriousness of the crime" factor weighs against a finding of arrest was erroneous because Cabrito "did not exhibit a dangerous driving pattern" and was "fully compliant" and respectful with the officer. We disagree. As mentioned above, the record shows the officer did observe Cabrito engage in a dangerous driving pattern. Moreover, Cabrito concedes that "the crime of DUI is serious as the district court concluded." Cabrito also asserts the district court erred in finding the length of the encounter weighed against a finding of an arrest because this was not "a brief encounter to check a license." Instead, Cabrito asserts the length of the encounter was unreasonable because it was for "an extended period of time to conduct field sobriety tests, during which time [Cabrito] remained handcuffed and fully cooperative." However, the record shows that the officer did not unreasonably extend the detention beyond what was required for him to properly administer the field sobriety testing and BAC test. Most of the detention's duration was spent administering the field sobriety tests and BAC test which, as previously explained above, the officer had reasonable suspicion to conduct. Additionally, the record also shows the officer followed his training and the department's protocols for the proper administration of a BAC test, which itself required distinct periods of time both prior to and during the test to ensure accurate results. Cabrito has failed to show the district court erred in evaluating the *Frank* factors and finding those factors weigh in favor of finding an investigative detention.

## C. Probable Cause

Cabrito contends his performance during field sobriety testing "provided no objective basis for the officer to entertain an honest and strong suspicion that [Cabrito] was guilty of DUI." Cabrito argues that permitting the officer in this case to rely solely on the HGN test in order to arrest Cabrito "undermines the administration of" the field sobriety tests and "ignores the mandate

9

that this Court must determine whether the totality of the circumstances justifies the arrest." Cabrito's argument ignores that he was not arrested just based on the HGN test. Rather, Cabrito's failure of the HGN test was one of several factors contributing to the probable cause determination supporting an arrest.

Probable cause is the possession of information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong presumption that a person placed under arrest is guilty of a crime. *State v. Williams*, 162 Idaho 56, 66, 394 P.3d 99, 109 (Ct. App. 2016). Probable cause deals with the factual and practical considerations on which reasonable and prudent persons act. *Brinegar v. United States*, 338 U.S. 160, 175 (1949); *Williams*, 162 Idaho at 66, 394 P.3d at 109. When reviewing an officer's actions, the trial court must judge the facts against an objective standard, i.e., whether the facts available to the officer, at the moment of the seizure or search, warrant a reasonable person in holding the belief that the action taken was appropriate. *Williams*, 162 Idaho at 66, 394 P.3d at 109.

The district court cited several facts known to the officer, beyond Cabrito's failure of the HGN test, which gave rise to probable cause for an arrest. First, Cabrito drove without his headlights in the dark early morning hours, which the district court found demonstrated "inattention often associated with impaired driving." As noted, Cabrito also drove onto the sidewalk when he pulled over. The district court found that "such driving shows impaired driving." Further, the district court noted there were two open containers in Cabrito's vehicle, "which implies each person was drinking." Additionally, the officer smelled alcohol both near Cabrito's vehicle and during the field sobriety tests and also noticed "Cabrito had bloodshot, glassy eyes." Moreover, Cabrito admitted to having a beer earlier that evening. Taken together, and under the totality of the circumstances, the district court found that "these facts [gave] rise to probable cause to arrest Cabrito for driving under the influence."

The district court also found *State v. Hunter*, 156 Idaho 568, 328 P.3d 548 (Ct. App. 2014) "persuasive" and determined "the facts in this case and *Hunter* are very similar." In *Hunter*, this Court held that the information available to the arresting officer, including HGN test results, provided probable cause to arrest Hunter for DUI. *Id.* at 572, 328 P.3d at 552. Cabrito and Hunter both: drove at night without using the vehicle's headlights; exhibited six decision points on the HGN test; did not score any errors on the walk and turn test; and had comparable blood alcohol

levels. The district court also cited differences between this case and *Hunter*. Specifically, while Hunter swayed during the one-legged stand test, Cabrito completed the test without problem and did not sway. The district court found the "primary distinction" between this case and *Hunter* is that "the investigating officer in *Hunter* was more experienced and trained in DUI investigations." However, absent any evidence that the officer in this case improperly performed and/or scored the HGN test, the district court declined "to deviate from the reasoning in *Hunter*." Accordingly, the district court found *Hunter* persuasive.

Cabrito also asserts "there are clear differences which distinguish this case" from *Hunter*. First, Cabrito argues that, while "Hunter told the officer he was coming from a bar and that he ha[d] consumed three drinks that evening," the same cannot be said here. However, the record shows that the officer in this case knew Cabrito and his passenger were coming from a bar. Next, Cabrito highlights the fact that the officer in *Hunter* "confirmed the HGN results by administering the test for a second time." That the officer in this case did not administer a second HGN test does not necessitate a deviation from the holding of *Hunter*, nor does the fact that Hunter failed an additional field sobriety test. Finally, Cabrito contends the facts of this case are distinguishable because, unlike in this case, the officer in *Hunter* "had specialized training in DUI cases and had conducted several hundred DUI investigations." We disagree. As discussed by the district court, no evidence was presented to show the officer in this case improperly performed and/or scored Cabrito's HGN test. As such, there is no reason to deviate from our reasoning in *Hunter*. Accordingly, Cabrito's attempts to distinguish the facts of this case from *Hunter* are unpersuasive.

Cabrito also argues "this Court should overrule the holding" in *Hunter*. Cabrito offers three reasons he believes we should overrule *Hunter*. First, Cabrito asserts "*Hunter* stands alone in its determination that the HGN test alone equates to probable case [sic] to arrest." However, *Hunter* does not stand for such a proposition. As stated above, the officer in *Hunter* relied on more than Hunter's failure of the HGN test to find probable cause to arrest him. *See Hunter*, 156 Idaho at 572, 328 P.3d at 552. Second, Cabrito asserts we should overrule *Hunter* because the "opinion has never been cited in subsequent Idaho appellate cases." That *Hunter* has not been cited in subsequent appellate cases does not mean we should overrule its holding. Indeed, the absence of citing history is not a relevant factor in determining whether to overrule precedent. *See State v. Koivu*, 152 Idaho 511, 272 P.3d 483 (2012) (explaining that precedent will ordinarily not be

overruled unless it is "manifestly wrong" or has "proven over time to be unwise or unjust"). Third, Cabrito argues that *Hunter* is contrary to prior and subsequent law "requiring courts to examine the totality of the evidence and ignores the policy behind peace officer procedures to perform three" field sobriety tests. Cabrito does not, however, cite the prior or subsequent case law he claims is contradicted by the holding in *Hunter*, nor does he provide any authority to support his argument. A party waives an issue on appeal if either authority or argument is lacking. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). Cabrito has failed to show any legitimate reason to overrule *Hunter*. Accordingly, Cabrito has failed to show the district court erred in finding any de facto arrest was supported by probable cause.

## IV.

## CONCLUSION

Based on the totality of the circumstances, the officer had reasonable and articulable suspicion to investigate Cabrito for DUI. Additionally, Cabrito was not subject to a de facto arrest when the officer placed him in handcuffs and in the patrol vehicle prior to the BAC test. Even assuming Cabrito was subject to a de facto arrest, the arrest was supported by probable cause. Cabrito has therefore failed to show the district court erred in denying his motion to suppress. Accordingly, Cabrito's judgment of conviction for felony possession of a controlled substance, misdemeanor possession of a controlled substance, and inattentive driving is affirmed.

Chief Judge GRATTON and Judge HUSKEY, **CONCUR**.